*JH*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, THE STATE OF GEORGIA, THE STATE OF IOWA, THE STATE OF INDIANA, THE STATE OF MINNESOTA, THE STATE OF OKLAHOMA, and THE STATE OF TEXAS, *ex rel.* MATTHEW CIESZYNSKI, | 1:13-cv-04052<br>Judge James F. Holderman<br>Magistrate Judge Sidney I. Schenkier<br><br>Filed Under Seal and In Camera |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| LIFEWATCH SERVICES, INC., | **FILED** |
| Defendant. | MAY 3 1 2013<br>5-31-13<br>THOMAS G. BRUTON<br>CLERK, U S DISTRICT COURT |

### COMPLAINT

Plaintiffs, the United States of America and the States of Georgia, Iowa, Indiana, Minnesota, Oklahoma, and Texas, through Relator Matthew Cieszynski ("Relator"), state as follows:

### STATEMENT OF THE CASE

1. Since it was first enacted, Medicare has prohibited providers from seeking reimbursement for services performed outside the United States, a restriction that reflects both a policy decision that federal funds for healthcare should be spent only in the United States, and a practical consideration that it is difficult to adequately monitor healthcare services provided overseas.

2. Lifewatch Services, Inc. ("Lifewatch"), which collects millions of dollars from federal and state healthcare programs, including Medicare, for providing remote monitoring of heart conditions, routinely violates that prohibition by using technicians located in India, including many who are not certified, to perform work

that it falsely claims is performed by certified technicians in the United States. Those actions violate the False Claims Act and analogous state statutes, and put patients' lives at risk.

3.      This is an action to recover damages and civil penalties on behalf of the United States of America and the States of Georgia, Iowa, Indiana, Minnesota, Oklahoma, and Texas, arising from false statements and claims made or caused to be made by Lifewatch in violation of the False Claims Act ("FCA"), as amended, 31 U.S.C. § 3729 *et seq.*, and in violation of analogous state statutes.

4.      As a certified technician working for Lifewatch, Cieszysnki is an original source of the allegations in this Complaint, and he has personal knowledge that Lifewatch is using technicians located in India, including some who are not certified, and that Lifewatch has taken steps to conceal this fraud.

## PARTIES

5.      Plaintiff-Relator Matthew Cieszynski is an Illinois resident and a certified technician who has worked at Lifewatch for approximately ten years. As a certified technician, he is responsible for conducting heart monitoring tests and for checking the work of other technicians.

6.      Lifewatch Services, Inc. is a Delaware corporation with its headquarters in Rosemont, Illinois.

## JURISDICTION

7.      The Court has jurisdiction over this matter pursuant to 31 U.S.C §§ 3730(b)(1) and 3732 of the FCA, under 28 U.S.C. § 1331 as a federal question and controversy arising under federal law, under 28 U.S.C. § 1345 as an action

commenced by the United States, and has supplemental jurisdiction under 28 U.S.C. § 1367(a).

8.      Venue is proper in this District under 28 U.S.C. §§ 1391 (b) and (c) and 31 U.S.C § 3732 because Lifewatch does business in this District and because the events and/or omissions giving rise to the claims asserted herein occurred in this District.

9.      This lawsuit is not based on any publicly disclosed information, and Cieszynski is the original sources of information within the meaning of 31 U.S.C. § 3730(e)(4) and the analogous state statutes. He has direct and independent knowledge of the fraud through his work at Lifewatch, and he voluntarily disclosed the information on which the allegations here are based to the government before filing this action.

## BACKGROUND

### *Government Insurers*

10.      The United States, acting through the Department of Health and Human Services, administers the Health Insurance Program for the Aged and Disabled established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* ("Medicare"), and Grants to States for Medical Assistance Programs pursuant to Title XIX of the Act, 42 U.S.C. §§ 1396 *et seq.* ("Medicaid"). Medicare is a federally-funded health insurance program primarily for the elderly. Medicare was created in 1965 when Title XVIII of the Social Security Act was adopted.

11.      Medicaid was created at the same time as Medicare, in 1965, when Title XIX was added to the Social Security Act. Medicaid is a public assistance

3

program to provide payment of medical expenses for low-income patients. Funding for Medicaid is shared between the federal government and those state governments that choose to participate in the program. Medicaid coverage for diagnostic test services is modeled after Medicare's coverage.

12.     The United States, acting through the Department of Defense, administers the Military Health System, including TRICARE ("TRICARE"), which is a regionally managed health care program for Active Duty, Activated Guard and Reserves, Retired members of the uniformed services, their families, and survivors. TRICARE brings together the health care resources of the Army, Navy and Air Force and supplements them with networks of civilian health care professionals to provide better access and high quality service while maintaining the capability to support military operations. Active Duty and Guard and Reserve service members are automatically enrolled in TRICARE Prime, but military dependents and retirees must choose the TRICARE option that best suits their needs.

13.     The United States, acting through the Department of Veterans Affairs, administers VA Health Care ("VA") primarily for veterans with service connected disabilities and for veterans who fall below a certain low-income threshold.

14.     Medicare, Medicaid, TRICARE, and the VA will be collectively referred to as the "Government Insurers" in this Complaint.

*Reimbursement from Government Insurers*

15.     At all times relevant to this Complaint, Lifewatch provided services to patients insured by the Government Insurers and sought reimbursement for those services.

16.     Lifewatch provides four main services for patients covered by the Government Insurers: Ambulatory Cardiac Telemetry ("ACT"); Holter Monitoring ("Holter"); Holter EX; and Event monitoring services.

17.     ACT is a test to diagnose a heart condition known as arrhythmia, which is a potentially life-threatening irregular heart rate or rhythm that affects a substantial number of senior citizens.

18.     Lifewatch's ACT is "an automatically activated system that requires no patient intervention to either capture or transmit an arrhythmia when it occurs." *See* http://www.lifewatch.com/ACT. The ACT monitoring system is left in place on the patient for up to 30 days to help increase the chance of diagnosing asymptomatic arrhythmias.

19.     If the ACT test indicates an arrhythmia, a Lifewatch technician analyzes the arrhythmia and then provides the results to the patient's doctor.

20.     Similarly, the Holter test is a noninvasive remote monitoring test that is used to diagnose arrhythmias. Patients wear the Holter for one to three days, during which the Holter measures every heart beat.

21.     A Lifewatch technician monitors the Holter test and summarizes the results in a report that is provided to the patient's physician.

5

22. Holter EX and Event monitoring are also remote monitoring services, similar to ACT and Holter.

23. After Lifewatch performs a test for patients insured by the Government Insurers, Lifewatch or the referring physicians submit claims for reimbursement.

24. In submitting claims for reimbursement to the Government Insurers, providers, including Lifewatch, utilize five-digit Current Procedural Terminology ("CPT") codes developed by the American Medical Association to report the services and procedures.

25. Lifewatch primarily bills for ACT-related services using CPT code 93229.

26. Lifewatch primarily bills for Holter-related services using CPT code 93226.

27. Lifwatch primarily bills for Event-related services using CPT codes 93270 and 93271.

28. To participate in these government-funded programs and to claim payment and/or reimbursement for services provided, providers submit CMS Form 1500 to the Government Insurers. Indeed, CMS Form 1500 is required for claims submitted to Medicare, Medicaid, TRICARE and VA.

29. As a condition to receiving payment and/or reimbursement from the Government Insurers for claims submitted, providers, including Lifewatch, are required to certify on CMS Form 1500 that, among other things, the CPT code

utilized for reimbursement purposes is justified by the services rendered in accordance with the CPT Guidelines, and Medicaid and Medicare reimbursement rules.

30.     Lifewatch's fraudulent practices resulted in false claims being submitted to the Government Insurers because it knowingly submitted or caused to be submitted claims that were not eligible for payment.

LIFEWATCH'S FRAUD

31.     Lifewatch is defrauding the Government Insurers by seeking reimbursement for work performed by technicians located in India, some of whom are not certified.

32.     Lifewatch's scheme is illegal for two reasons. First, it is illegal to seek reimbursement from Medicare and Medicaid for services performed outside the United States. Second, it is illegal for Lifewatch to use non-certified technicians to perform the relevant tests, regardless of where the services are performed.

33.     Lifewatch has engaged in an intentional scheme to avoid the requirement that it use only certified technicians located in the United States by outsourcing a significant amount of its work to technicians located in India, and then concealing that at least some of those technicians are not certified.

34.     Lifewatch's fraud contributed to the death of at least one patient in 2012 after a technician located in India failed to properly diagnose that patient's heart condition.

7

*Lifewatch Illegally Uses Technicians Located in India*

35.     Medicare does not pay for services "which are not provided within the United States," other than in limited circumstances not applicable here. 42 USC § 1395y(a)(4); *see also* 42 CFR 411.9(a) ("Medicare does not pay for services furnished outside the United States.")

36.     The CMS Medicare Benefit Policy Manual explains that the prohibition on paying for services outside of the United States applies to services performed by anyone located outside of the United States, and not just services performed on patients who are located outside of the United States.

37.     The Medicare Benefit Policy Manual contains the following guidance: "For example, if a radiologist who practices in India analyzes imaging tests that were performed on a beneficiary in the United States, Medicare would not pay the radiologist or the U.S. facility that performed the imaging test for any of the services that were performed by the radiologist in India." *See* Medicare Benefit Policy Manual, Ch. 16 § 60.

38.     Lifewatch blatantly violates these laws and regulations by allowing technicians in India to perform a substantial number of tests, including for patients insured by the Government Insurers.

39.     Examples include the following:

- Patient M.M., who received ACT testing in April 2012, and whose primary insurer is Medicare. Lifewatch used a technician located in Indian to perform the ACT work for patient M.M. Lifewatch's documents indicate that the technician who performed this work was located in Villivakkam, India.

- Patient M.S., who received ACT testing in May 2012, and whose primary insurer is Medicare. Lifewatch used a technician located in India to perform the ACT work for patient M.S.; the procedure was then billed to Medicare, which paid $754.87.

- Patient P.E., who received Holter testing in July 2012, and whose primary insurer is Medicare. The report for P.E.'s physician was prepared by a technician located in India and identified on the report as M. Sundar. This procedure was billed to Medicare using CPT code 93226, for which Lifewatch received payment.

- Patient J.F., who received Holter testing in July 2012, and whose primary insurer is Medicare. The report for J.F.'s physician was prepared by a technician located in India and identified on the report as M. Sundar. This procedure was billed to Medicare using CPT code 93226, for which Lifewatch received payment.

- Patient W.N., who received Holter testing in July 2012, and whose primary insurer is Medicare. The report for W.N.'s physician was prepared by a technician located in India and identified on the report as M. Sundar. This procedure was billed to Medicare using CPT code 93226, for which Lifewatch received payment.

- Patient L.W., who received Holter testing in July 2012, and whose primary insurer is Medicare. The report for L.W.'s physician was prepared by a technician located in India and identified on the report as M. Sundar. This procedure was billed to Medicare using CPT code 93226, for which Lifewatch received payment.

- Patient S.M., who received Holter testing in September 2012, and whose primary insurer is Medicare. The report for S.M.'s physician was prepared by a technician located in India and identified on the report as G. Sakthivel. It is unclear which Indian technician actually performed the work, however, as multiple technicians in India complete reports using the name G. Sakthivel.

- Patient E.R., who received Holter testing in March 2013, and who is insured by Medicare. The report for E.R.'s physician was also prepared by an Indian technician identified as G. Sakthivel.

- Patient L.L., who received Holter testing in March 2013, and who is insured by Medicare. The report for L.L.'s physician was prepared by Indian technician S. Thasaya.

- Patient L.I., who received Holter testing in March 2013, and who is insured by Medicare. The report for L.I.'s physician was also prepared by Indian technician S. Thasaya.

- Patient T.O., who received Holter testing in March 2013, and who is insured by Medicare. The report for T.O.'s physician was also prepared by an Indian technician identified as G. Sakthivel.

- Patient M.R., who received Holter testing in April-May 2013, and who is insured by Medicare. The report for M.R.'s physician was also prepared by an Indian technician identified as G. Sakthivel.

40.     Lifewatch has received substantial sums of money from the Government Insurers that it was not entitled to receive by fraudulently billing for services performed outside the United States.

41.     Lifewatch is well aware that its billing practices were fraudulent, and that it has collected substantial sums from the Government Insurers based on false and fraudulent claims and statements in support of such claims.

*Lifewatch Illegally Uses Non-Certified Technicians Located in India*

42.     Lifewatch is certified as an Independent Diagnostic Testing Facility ("IDTF"), which means that it is authorized to use certified technicians to perform the above-described tests and to receive reimbursement from the Government Insurers for that work.

43.     To obtain certification as an IDTF, a company must meet the standards set forth in 42 C.F.R. § 410.33. Relevant for this case, "[a]ny nonphysician personnel used by the IDTF to perform tests must demonstrate the basic qualifications to perform the tests in question and have training and proficiency as evidenced by licensure or certification by the appropriate State health or education department. In the absence of a State licensing board, the technician

10

must be certified by an appropriate national credentialing body. The IDTF must maintain documentation available for review that these requirements are met." 42 C.F.R. § 410.33(c).

44.     The ITDF must certify in its application that it has "technical staff on duty with the appropriate credentials to perform tests," and it "must be able to produce the applicable Federal or State licenses or certifications of the individuals performing these services." 42 C.F.R. § 410.33(g)(12).

45.     In addition, when applying to become an IDTF, a company must submit to CMS a list of every technician who will be performing tests, including the technician's social security number, and must provide CMS with a copy of each technician's "State license or certificate." *See* CMS-855B, Medicare Enrollment Application at 44.

46.     An IDTF must report changes to any information in its application within 90 days of the change becoming effective. 42 C.F.R § 410.33(g)(2). In other words, within 90 days of hiring a technician that was not listed on the IDTF's initial application, the IDTF must provide CMS with that technician's social security number and a copy of any "State license or certificate," among other identifying information.

47.     Upon information and belief, Lifewatch has never provided CMS with the name of any non-certified Indian technician, which violates the regulations.

48.     Every time Lifewatch submits or causes to be submitted a claim for reimbursement from a Government Insurer for work performed by a non-certified technician, it is violating the law and putting patients' lives in danger.

49.     Yet, Lifewatch consistently uses non-certified technicians located in India, and then conceals that behavior.

50.     Specifically, Relator's direct supervisor, Joseph Clauser, a Lifewatch Senior Clinical Manager, has set up a dummy folder, labeled as "Cindy Stetson/India Tech," to track Holter reports that are completed by non-certified technicians in India.

51.     After the non-certified Indian technician completes the report, Clauser or another technician working at his direction modifies the report by replacing the Indian technician's name with his or her name, and then submitting it to the physician as if the certified, United States based technician had performed the work.

52.     The Holter reports are sent to the prescribing physician, so Lifewatch's fraudulent reports, which replace the non-certified technician's name with the name of a certified technician, actively conceal from the doctor the true identity of the person who performed the work for his or her patient.

53.     Lifewatch has submitted or caused to be submitted many such claims. Examples include:

- Patient M.F., who received Holter testing in July 2012. A non-certified technician in India referred to as Thoti C. RajaKumar prepared the report to be submitted to M.F.'s physician, and then Joseph Clauser replaced RajaKumar's name with his own before sending the file along

to the physician. This procedure was billed to Medicare using CPT code 93226, for which Lifewatch received payment.

- Patient M.A., who received Holter testing in July 2012. As with patient M.F., non-certified Indian technician Thoti C. RajaKumar prepared the report to be submitted to M.F.'s physician, and then Joseph Clauser replaced RajaKumar's name with his own before sending the file along to the physician. This procedure was billed to Medicare using CPT code 93226.

- Patient J.S., who received Holter testing in July 2012. A non-certified Indian technician prepared the report, and then Joseph Clauser replaced that technician's information with his own name. This procedure was billed to Medicare using CPT code 93226, for which Lifewatch received payment.

- Patient M.M., who received Holter testing in July 2012. A non-certified Indian technician prepared the report to be submitted to M.J.'s physician, and then Joseph Clauser replaced that technician's information with his own name. This procedure was billed to Medicare using CPT code 93226.

- Patient D.T., who received Holter testing in April 2013. A non-certified Indian technician, P. Ramachandran, prepared the report to be submitted to D.T.'s physician, and then another technician in the United States replaced the Indian technician's information with his own, placing an asterisk by his name to indicate that the work had been done by a non-certified technician in India.

54.     Recognizing the problematic nature of this scheme, the certified technicians have recently begun marking their names with an asterisk when they improperly replace the non-certified Indian technician's name with their own.

55.     Lifewatch has received substantial sums of money from the Government Insurers that it was not entitled to receive by fraudulently billing for services performed by non-certified technicians.

13

56.     Lifewatch is well aware that its billing practices were fraudulent, and that it has collected substantial sums from the Government Insurers based on false and fraudulent claims and statements in support of such claims.

**COUNT I**
(False Claims Act)
(31 U.S.C. §§ 3729(a)(1), (2))

57.     Plaintiffs/Relator hereby reallege and incorporate by reference the allegations contained in the paragraphs above.

58.     Through the above-described conduct, Lifewatch has knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the Government Insurers.

59.     Through the above-described conduct, Lifewatch has knowingly made, used, or caused to be made or used, a false record or statement to get false or fraudulent claims paid or approved by the Government Insurers.

**COUNT II**
(Georgia False Medicaid Claims Act: Presentation of False Claims)
(Ga. Code §§ 49-4-168.1(a)(1), (2))

60.     Plaintiffs/Relator hereby reallege and incorporate by reference the allegations contained in the paragraphs above.

61.     Through the above-described conduct, Lifewatch has knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the Government Insurers.

62.     Through the above-described conduct, Lifewatch has knowingly made, used, or caused to be made or used, a false record or statement to get false or

14

fraudulent claims paid or approved by the Government Insurers.

## COUNT III
(Iowa False Claims Act: Presentation of False Claims)
(Iowa Code § 685.2(1)(a), (b))

63. Plaintiffs/Relator hereby reallege and incorporate by reference the allegations contained in the paragraphs above.

64. Through the above-described conduct, Lifewatch has knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the Government Insurers.

65. Through the above-described conduct, Lifewatch has knowingly made, used, or caused to be made or used, a false record or statement to get false or fraudulent claims paid or approved by the Government Insurers.

## COUNT IV
(Indiana False Claims Act: Presentation of False Claims)
(Ind. Code §§ 5-11-5.5-2(b)(1), (b)(2), (b)(8))

66. Plaintiffs/Relator hereby reallege and incorporate by reference the allegations contained in the paragraphs above.

67. Through the above-described conduct, Lifewatch has knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the Government Insurers.

68. Through the above-described conduct, Lifewatch has knowingly made, used, or caused to be made or used, a false record or statement to get false or fraudulent claims paid or approved by the Government Insurers.

## COUNT V
### (Minnesota False Claims Act: Presentation of False Claims)
### (Minn. Stat. §§ 15C.02(a)(1), (a)(2))

69.     Plaintiffs/Relator hereby reallege and incorporate by reference the allegations contained in the paragraphs above.

70.     Through the above-described conduct, Lifewatch has knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the Government Insurers.

71.     Through the above-described conduct, Lifewatch has knowingly made, used, or caused to be made or used, a false record or statement to get false or fraudulent claims paid or approved by the Government Insurers.

## COUNT VI
### (Oklahoma False Claims Act: Presentation of False Claims)
### (63 Okla. Stat. §§ 5053.1(B)(1), (B)(2))

72.     Plaintiffs/Relator hereby reallege and incorporate by reference the allegations contained in the paragraphs above.

73.     Through the above-described conduct, Lifewatch has knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the Government Insurers.

74.     Through the above-described conduct, Lifewatch has knowingly made, used, or caused to be made or used, a false record or statement to get false or fraudulent claims paid or approved by the Government Insurers.

## COUNT VII
### (Texas False Claims Act: Making or Using False Statement)
### (Tex. Hum. Res. Code §§ 36.002(1), (6))

75.   Plaintiffs/Relator hereby reallege and incorporate by reference the allegations contained in the paragraphs above.

76.   Through the above-described conduct, Lifewatch has knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Government Insurers.

77.   Through the above-described conduct, Lifewatch has knowingly made, used, or caused to be made false or fraudulent claims paid or approved by the Government Insurers for services performed by personnel who were not properly licensed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs/Relator request that judgment be entered in their favor and against Lifewatch as follows:

a.   in the amount of the maximum statutory penalties for each false claim and false statement that Lifewatch submitted or caused to be submitted to the Government Insurers, together with treble the amount of payment received and/or costs avoided;

b.   awarding Relator 30% of any recovery;

c.   awarding the costs and reasonable attorneys' fees incurred in prosecuting this action; and

d.   all such further relief as may be just and proper.

## JURY DEMAND

Plaintiffs/Relator hereby demand trial by jury.

Respectfully submitted,

*Scott R. Rauscher*

Arthur Loevy
Michael Kanovitz
Jon Loevy
Scott R. Rauscher
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
Phone: (312) 243-5900
Fax:  (312) 243-5902
Attorneys for Plaintiff/Relator

18