# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES *ex rel.* Cieszyski *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 13 CV 4052 |
| v. | ) | |
| | ) | |
| LIFEWATCH SERVICES, INC., | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff-relator Matthew Cieszynski ("Relator" or "Plaintiff") is a certified technician for defendant LifeWatch Services, Inc. ("LifeWatch"). He brought suit against LifeWatch under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et. seq.*, and the related false claims statutes of the states of Georgia, Indiana, Iowa, Minnesota, Oklahoma, and Texas, alleging that LifeWatch collected reimbursements for medical services that were performed by non-U.S.-based technicians and/or non-certified technicians, in violation of Medicare and other federal and state insurance laws and regulations. After the United States declined to intervene in the matter, the complaint was unsealed on December 18, 2014 (doc. # 1). LifeWatch moved to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b) (doc. # 23). Relator voluntarily amended his complaint (doc. # 37) and now LifeWatch again moves to dismiss (doc. # 41). For the reasons stated, we deny the motion, subject to one exception explained below.

### I.

A motion to dismiss pursuant to Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th

Cir. 2009). A complaint must contain enough information, in the form of "a short and plain statement of the claim," to show that the pleader is entitled to relief, and must give the defendant "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding a motion to dismiss under this standard, a court must determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015), *quoting Twombly*, 550 U.S. at 557. This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "[a] claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir.2013) (quoting *Iqbal*, 556 U.S. at 678).

That said, even after the announcement of *Twombly's* "plausibility" standard, the Seventh Circuit has made clear that a court faced with a motion to dismiss pursuant to Rule 12(b)(6) must still accept as true all well-pleaded facts in the complaint and must construe the complaint in the light most favorable to the non-moving party, drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). A court may consider documents attached to the complaint without converting the motion into one for summary judgment. *Bible,* 799 F.3d at 640. In this case, Plaintiff attached a copy of Centers for Medicare and Medicaid Services ("CMS") Form 1500 to his amended complaint (Amended Complt., Ex. 1), and therefore, we may consider it when deciding the motion to dismiss.

When a complaint alleges fraud, the federal rules add an elevated pleading standard, which requires that "a party must state with particularity the circumstances constituting the fraud

or mistake." Fed. R. Civ. P. 9(b), *see also Tricontinental Industries, Ltd v. Pricewaterhouse Coopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). The Seventh Circuit has described this requirement as requiring a complaint to plead the "who, what, when, where, and how" of the fraud. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Claims brought pursuant to the False Claims Act unquestionably are subject to the Rule 9 standard. *Thulin v. Shopko Stores Operating Co., LLC,* 771 F.3d 994, 998 (7th Cir. 2014). Even with the elevated pleading standard, however, Rule 9 does not require a relator to plead evidence; the Fed. R. Civ. P. 8 requirement that the complaint contain a "short and plain statement of the claim" still applies. *United States ex. rel. Garbe v. Kmart Corporation*, 968 F.Supp.2d 978 (S.D.Ill. 2013), *citing Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir. 1975).

## II.

We accept as true the following facts in the Amended Complaint. Defendant LifeWatch is a certified Independent Diagnostic Testing Facility ("IDTF"), which provides a number of remote heart-monitoring services for patients covered by government insurance programs Medicare, 42 U.S.C. §§ 1395 *et. seq.*, Medicaid, 42 U.S.C. §§ 1396 *et. seq.*, TRICARE (for active and retired members of the armed services and their families), and the Veterans Administration Health Care ("VA"), (collectively, the "Government Insurers") (Am. Complt. ¶¶ 2, 10, 12, 13, 15, 48). LifeWatch provides four main services to patients: Ambulatory Cardiac Telmetry ("ACT"), Holter Monitoring ("Holter"), ACT EX, and Event Monitoring services. Each of these services involves a patient wearing an external, non-invasive heart monitor for up to one month to capture and record cardiac activity (Am. Complt. ¶¶ 16, 18, 20, 22).[1] A

---

[1]Unless otherwise noted, when we refer to services provided to "patients," we are describing only those individuals who are insured by one of the Government Insurers or parallel state insurance programs. Our opinion does not address individuals who may have obtained heart monitoring services from LifeWatch, but for whom no reimbursement was sought from a Government Insurer.

LifeWatch technician remotely monitors the test to detect arrhythmias or other heart activity and then analyzes and/or summarizes the test results and provides them to the patient's doctor in a report (Am. Complt. ¶¶ 19, 21).

After a patient completes a heart monitoring test, LifeWatch or the referring physician submits a claim for reimbursement to the applicable Government Insurer (Am. Complt. ¶¶ 23, 24).[2] To claim reimbursement, providers submit CMS Form 1500 to the government (Am. Complt. ¶¶ 23, 29). Submission of CMS Form 1500 is required in order to obtain payment for claims submitted to the Government Insurers (Am. Complt. ¶ 29).[3] One section of Form 1500 requires the insertion of a "Current Procedural Terminology" ("CPT") code to identify the specific services and procedures for which reimbursement is being claimed (Am. Complt. ¶¶ 24, 25, 30).

As a condition of receiving payment and/or reimbursement from the Government Insurers for the claims submitted, providers – including LifeWatch – are required to certify on Form 1500 that, among other things, the CPT code used for reimbursement is justified by the services rendered in accordance with CPT guidelines and Medicare and Medicaid reimbursement rules (Am. Complt. ¶30).[4] Form 1500 also requires that the provider make other certifications,

---

[2] The Amended Complaint uses, but does not define, the term "referring physician." According to the Medicare Claims Processing Manual, a referring physician is "a physician who requests an item or service for the beneficiary for which payment may be made under the Medicare program." https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/clm104c26.pdf

[3] The Amended Complaint refers to LifeWatch as a "provider" (see, e.g., Am. Cmplt. ¶ 24). The Amended Complaint does not explicitly refer to referring physicians as providers. But, the Amended Complaint alleges that referring physicians submit claims for reimbursement (Am. Cmplt. ¶ 23) and only "providers" may seek reimbursement by submitting a Form 1500 (Id. at ¶ 29). We therefore construe the Amended Complaint as alleging that referring physicians are "providers."

[4] A careful review of Form 1500 does not reveal this exact certification language. Instead, the form states "I certify that the services listed above were medically indicated and necessary to the health of the patient." There is no certification specific to CPT codes. The distinction does not affect our decision, however, because the Relator does not allege that LifeWatch falsified CPT codes or that the work performed did not match the CPT codes contained on

including: (1) that it has "provided or will provide sufficient information required to allow the government to make an informed eligibility and payment decision;" and (2) that the claim "complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment, including but not limited to the Federal anti-kickback statutes and Physician Self-Referral law ("Stark Law")" (Am. Complt. ¶ 31).

As codified in 42 U.S.C. §1395y(a)(4) and 42 C.F.R. 411.9(a), Medicare prohibits reimbursement for services "which are not provided within the United States," including situations in which the patient is located in the United States but the actual service (such as analysis of radiology imagery) is performed outside the United States. (Am. Complt. ¶¶ 37, 38, 38). The CMS Medicare Benefit Policy Manual reiterates the prohibition against paying for services performed outside the United States for a patient inside the United States (Am. Complt. ¶¶ 38, 39). Plaintiff alleges that in such a scenario, neither the radiologist nor the facility in the United States that performed the imaging test would receive reimbursement from Medicare for services provided outside the United States (*Id.*). Plaintiff also alleges that the VA program has this same limitation on reimbursement (Am. Complt. ¶ 40), as do the Medicaid statutes for Georgia, Indiana, Iowa, Minnesota, Oklahoma, and Texas (Am. Complt. ¶ 42).

According to Plaintiff, LifeWatch uses technicians in India to perform a substantial number of remote cardiac monitoring tests, including some for patients covered by the Government Insurers (Am. Complt. ¶ 43). As examples, the Amended Complaint outlines 12 occasions in 2012 and 2013 when LifeWatch used technicians located in India to perform remote

---

the forms; such allegations would fall under a "factual falstity" theory, as explained below, which is not alleged here.

monitoring for patients undergoing ACT and Holter tests (Am. Complt. ¶ 44).[5] Plaintiff alleges that LifeWatch uses technicians located in India for work covered by all four of the Government Insurance programs (Am. Complt. ¶ 45). Plaintiff also alleges that LifeWatch was aware that its billing practices were fraudulent, and that it has collected substantial sums from the Government Insurers based on its billing for services that were not eligible for reimbursement because they were performed by technicians in India (Am. Complt. ¶ 47).

As part of its certification to become an IDTF, LifeWatch must meet certain standards, including that all non-physician personnel used to perform tests (such as monitoring technicians) must be certified by a state or national credentialing board (Am. Complt. ¶ 49). LifeWatch is required to maintain documentation demonstrating such requirements are met, and to certify in its application to become an IDTF that it has technical staff on duty with the appropriate credentials to perform tests (Am. Complt. ¶¶ 49, 50). The application process also requires that the applicant submit to CMS a list of every technician who will be performing tests, along with his or her social security number and a copy of his or her license; every time an IDTF hires a new technician, it has 90 days to amend its application by submitting the name, social security number and license information for the new hire (Am. Complt. ¶¶ 51, 52). TRICARE has a similar certification requirement for technicians, as do the Medicaid programs for Indiana, Minnesota, and Texas (Am. Complt. 54, 55, 56, 57).

Plaintiff alleges that LifeWatch regularly submitted reimbursement claims for work performed by non-certified technicians in India, and then took steps to conceal that fact by

---

[5] A typical example is the following allegation: "Patient M.S., who received ACT testing in May 2012, and whose primary insurer is Medicare. LifeWatch used a technician located in India to perform the ACT work for patient M.S.; the procedure was then billed to Medicare, which paid $754.87" (Am. Complt. ¶ 44, bullet 2). The other 11 examples do not allege a specific reimbursement amount, but ten of them provide the name of the technician in India who allegedly performed the monitoring work and allege that a procedure was billed to Medicare using a particular CPT code; four of the 11 also allege that LifeWatch received payment. All of the examples in paragraph 44 of the Amended Complaint concern either the ACT or Holter tests performed on patients covered by Medicare.

setting up a "dummy folder" to track Holter reports completed by these technicians (Am. Complt. ¶¶ 59, 60). LifeWatch then modified the reports prepared by these non-certified technicians before sending them to the referring physician by replacing the name of the technician in India with that of LifeWatch's Senior Clinical Manager or another LifeWatch technician who was certified (Am. Complt. ¶¶ 61, 62). Plaintiff lists five examples in 2012 and 2013, out of many instances in which this allegedly occurred, where LifeWatch changed the name on a Holter report from that of a non-certified technician in India to a certified Lifewatch technician before the report was sent to the referring physician (Am. Complt. ¶ 62, 63).[6] Further, Plaintiff alleges that LifeWatch technicians know this conduct is "problematic" because they mark their names with an asterisk on reports for which they replaced the name of a non-certified technician in India with their own (Am. Complt. ¶ 64).[7] In four of the five examples, Plaintiff alleges that the procedure was billed to Medicare (*Id.*, bullets 1-4). According to Plaintiff, LifeWatch has received substantial sums from the Government Insurers based on claims for work performed by non-certified technicians and/or technicians in India (Complt. ¶ 65).

## III.

The purpose of the False Claims Act is to give the government a vehicle "for recouping losses suffered through fraud." *U.S. v. Sanford-Brown, Ltd.,* 788 F.3d 696, 700 (7th Cir. 2015). The Attorney General may bring a lawsuit directly in the name of the United States, 31 U.S.C. § 3730(a); or, as here, a private individual, called a relator, may bring an action in the name of the

---

[6] A typical example is "Patient M.F., who received Holter testing in July 2012. A non-certified technician in India referred to as Thoti C. RajaKumar prepared the report to be submitted to M.F.'s physician, and then [LifeWatch's Senior Clinical Manager] replaced RajaKumar's name with his own before sending the file along to the physician. This procedure was billed to Medicare using CPT code 93226, for which LifeWatch received payment" (Complt. ¶ 63, bullet 1).

[7] An example of this claim is "Patient D.T., who received Holter testing in April 2013. A non-certified Indian technician, P. Ramachandran, prepared the report to be submitted to D.T.'s physician. and then another technician in the United States replaced the Indian technician's information with his own, placing an asterisk by his name to indicate that the work had been done by a non-certified technician in India" (Complt. ¶ 63, bullet 5).

government if the government elects not to sue. 31 U.S.C. § 3730(b); *see also, Sanford-Brown*, 788 F.3d at 700. The FCA imposes liability on any person or entity who:

> (a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; or
>
> (a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .

31 U.S.C. § 3729(a)(1)(A)-(B). *See also, U.S. ex rel. Grenadyor v. Ukranian Village Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014).

In its Motion to Dismiss, LifeWatch argues that the Relator has not pled with the requisite specificity facts required to state a plausible claim under the False Claims Act, and that he further has failed to meet the standards under Rule 9(b) for claims alleging fraud. We address each of these arguments in turn.

## IV.

We first consider LifeWatch's contention that the Amended Complaint should be dismissed under Rule 12(b)(6) because the Relator has failed to state a cognizable claim. At its core, the Amended Complaint makes a fairly straightforward allegation of fraud: the Government Insurers do not reimburse for medical services performed outside the United States or performed by non-certified technicians; LifeWatch used foreign-based and/or non-certified technicians to provide heart monitoring services; and LifeWatch (directly or indirectly) then presented claims for payment to the Government Insurers for these services even though it knew these claims were not reimbursable. Moreover, the claims LifeWatch presented for payment contained particular certifications – that it was providing enough information to allow the Government to make an informed payment decision, and that it was in compliance with all

Medicare and Medicaid rules and regulations. Further, the Relator alleges that LifeWatch had specific knowledge that its requests for reimbursement were false, as shown by the steps it took to hide the names of the technicians in India on the reports it submitted to referring physicians and in its own recordkeeping.

Under the FCA, liability may attach where a claim is "factually false" or "legally false." *U.S. ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295, 305 (3rd Cir. 2011).[8] A factually false claim is straightforward, and occurs "when the claimant misrepresents what goods or services that it provided to the Government . . ." *Wilkins*, 659 F.3d at 305, *cited in U.S. ex rel. Watkins v. KBR Inc.*, Case No. 4:10 cv 4010, 2015 WL 2455533 (C.D. Ill., May 22, 2015). This case does not concern allegations of factual falsity; that is, the Relator does not contend that LifeWatch submitted claims for reimbursement for heart monitoring services it did not actually provide. Faced with a set of facts that do not fit into the definition of factual falsity, the parties spill a great deal of ink trying to characterize how the alleged fraud fits (or, in defendant's case, does not fit) into the framework of the FCA.

LifeWatch argues that if a claim is not factually false, then to be actionable, it must be legally false, and that legal falsity requires "false representation of compliance with regulatory requirements" (Def. Reply at 2-3). LifeWatch also contends that the false representation must be "express," that is, the defendant must falsely and specifically certify that it is "in compliance

---

[8]The Seventh Circuit first discussed the theory of legal falsity under the FCA in *U.S. ex rel. Yannacopolous v. General Dynamics,* 652 F.3d 818, 824 (7th Cir. 2011), in affirming a grant of summary judgment for the defendant. In that case, the relator alleged that a federal contractor violated subsection (a)(1)(B) of the FCA when it falsely certified that its work was in compliance with a contract to purchase fighter jets, and also falsely certified that it was in compliance with a "federal contractor certification agreement." Although it did not adopt the theory of legal falsity outright, the Seventh Circuit quoted Tenth Circuit precedent in its opinion: "[i]f the breaching party falsely claims to be in compliance with the contract to obtain payment, however, there may an actionable false claim. *United States ex rel. Lemmon v. Envirocare of Utah, Inc.,* 614 F.3d 1163, 1168 (10th Cir.2010) (describing such a statement as a 'legally false request for payment'), citing *United States ex rel. Conner v. Salina Regional Health Center, Inc.,* 543 F.3d 1211, 1217 (10th Cir.2008)." *Yannacopolous,* 652 F.3d at 824.

with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds." *Wilkins*, 659 F.3d at 305. Defendant argues that Plaintiff has failed to allege any express false certification, and instead is attempting to advance an "implied" false certification theory. Such a theory has been endorsed by some circuits. *See Wilkins*, 659 F.3d at 305; *U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008). But, says LifeWatch, Plaintiff cannot proceed under that theory in light of *Sanford-Brown*, which held that the Seventh Circuit does not recognize an implied certification theory.

For his part, Plaintiff says he has alleged an express false certification theory (Pl. Resp. at 6), and that LifeWatch overstates the sweep of *Sanford-Brown*, which Plaintiff contends does not foreclose an implied certification theory on the facts here (*Id.* at 14). Further, Plaintiff disagrees that he can only state a claim for liability under the FCA if he identifies a false certification of compliance. Relator distinguishes between so-called "presentment" claims under Section 3729(a)(1)(A) and "false record" claims under Section 3729(a)(1)(B), arguing that only the latter require a certification of compliance (Pl. Resp. at 6, 8-9). A pure "presentment" claim, according to the Relator, does not require a certification of compliance if it involves "the knowing submission of claims by a person who has violated a statute or regulation that contains, on its face, a direct nexus to the government's payment decision" (Resp. at 7, *quoting United States v. Rogan*, 459 F.Supp.2d 692, 717-18 (N.D.Ill. 2006)).

The allegations of the Amended Complaint, and the parties' arguments for and against dismissal, suggest that we consider whether the Relator has stated a claim under the FCA pursuant to three separate theories – "false presentment," "express certification," and "implied certification." We will address each theory in turn.

**A.**

As we have explained, 31 U.S.C. § 3729(a)(1)(A) imposes liability on any "person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." A *prima facie* case under this section requires (1) a false or fraudulent claim; (2) which was presented for payment by the defendant, (3) with knowledge that the claim was false. *U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 741 (7th Cir. 2007), *cited in Sanford-Brown*, 788 F.3d at 709. Defendant does not address in its briefs Plaintiff's argument that under this section, certification of compliance – whether express or implied – is not needed. We agree with Plaintiff, and find that the Amended Complaint plausibly alleges that LifeWatch violated the FCA every time a claim was presented to the Government Insurers for payment based on services that LifeWatch knew were not eligible for reimbursement.[9]

Keeping in mind that statutory interpretation begins with the plain language of the statute, *U.S. v. Berkos,* 543 F.3d 392, 396 (7th Cir. 2008), we determine that "presenting" a false claim to the government means just that: to "formally deliver (a check or bill) for acceptance or payment." http://www.oxforddictionaries.com/us/definition/american_english/present (visited on September 30, 2015). This is what Relator says that LifeWatch did, either directly or through the referring physician, "by knowingly present[ing], or caus[ing] to be presented," claims that it knew were ineligible for reimbursement.

We see no basis to read any type of certification requirement into this subsection as a prerequisite to liability. Engrafting a certification requirement onto subsection (a)(1)(A) would

---

[9]Under the FCA, Plaintiff need not allege that LifeWatch itself submitted claims to a Government Insurer. Sections 3729(a)(1)(A) and (B) impose liability not only for entities that present false claims and knowingly make or use a false record, but also those entities that *cause* such actions by others. *See, e.g., United States v. King-Vassel,* 728 F.3d. 707, 711 (7th Cir. 2013). Here, the Amended Complaint plausibly alleges that LifeWatch provided false information (the location of the technicians and their identities) to referring physicians, who in turn used that information as a basis for reimbursement claims to Government Insurers.

have the effect of collapsing it into subsection (a)(1)(B), and thus would run afoul of the maxim of construction that courts must strive to give meaning to all parts of a statute. *Duncan v. Walker,* 533 U.S. 167 (2001). The few cases which touch on this subject support our approach.

The *Sanford-Brown* decision did not identify certification as an element of proof needed to establish a false presentment claim. 788 F.3d at 709. In *U.S. v. Rogan,* 459 F.Supp.2d 692, 717-718 (N.D. Ill. 2006) the court explained (in the context of listing a number of ways that submission of a false Medicare claim can violate the FCA) that an express certification of compliance is not necessary where there is a "knowing submission of claims by a person who has violated a statute or regulation that contains, on its face, a direct nexus to the government's payment decision." *See also, Abner v. Jewish Hosp. Healthcare Services, Inc.*, No. 4:05-cv-0106, 2008 WL 3853361, at *6 (S.D. Ind. August 13, 2008) (analyzing the same alleged fraudulent billing practices under both a "presentment" theory and a "false certification" theory); *U.S. ex. rel Greschrey v.Generations Healthcare, LLC*, 922 F.Supp.2d 695, 704 (N.D. Ill. 2012) (denying motion to dismiss based on allegations that hospice nurses changed their notes before requests for payment were presented to the government, without discussing certification of compliance).

The Amended Complaint satisfactorily alleges that the claims presented to the Government Insurers on the Form 1500s were false, and LifeWatch knew they were false: that is, the claims were premised on services that LifeWatch knew were not reimbursable, and that when the claims were submitted, LifeWatch knew the Government Insurers would have denied them, had they known the underlying services did not take place in the United States. For these reasons, we find that Relator has adequately stated a claim under Section 3729(a)(1)(A).[10]

---

[10]In *Sanford-Brown,* the appeals court rejected a Section 3729(a)(1)(A) claim, explaining that the defendant educational institution's good-faith entry into a "program participation agreement" that contained a certification of compliance with various education regulations did not constitute false presentment of a claim for payment, even if the entity later violated any of those regulations. As we see it, central to that decision was the conclusion that entry

12

**B.**

Relator also alleges that, apart from stating a claim under Section 3729(a)(1)(A), he also has stated a claim against LifeWatch pursuant to Section 3729(a)(1)(B) under a theory of express false certification. Under this section, a *prima facie* case has three essential elements: "(1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew the statement was false." *United States ex. rel. Rockey v. Ear Institute of Chicago, LLC*, No. 11 C 7258, 2015 WL 1502378 at*8 (N.D.Ill. March 25, 2015), *quoting United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). The false statement must also be material, that is, it "could have influenced the [government's] decision to pay." *Rockey*, 2015 WL 1502378 at *8, *quoting Yannacoupoulos v. Gen. Dynamics*, 652 F.3d 818, 830 (7th Cir. 2011), 31 U.S.C. § 3729(b)(4) defining "material").

LifeWatch argues that Relator's express certification theory fails because the Amended Complaint does not allege that LifeWatch knowingly certified compliance with any particular Medicare or Medicaid regulation, let alone 42 U.S.C. § 1395y(a)(4) and 42 CFR 411.9(a), which prohibit reimbursement for medical procedures that take place outside the United States, or 42 C.F.R. § 410.33, which requires the use of certified technicians. LifeWatch also argues that the Amended Complaint does not allege that payment by any government program is conditioned on such a certification (*i.e.*, materiality is not satisfied).

At the outset, we disagree that liability under Section 3729(a)(1)(B) cannot attach unless LifeWatch *specifically* certified compliance with the *exact* government statute or regulation that

---

into a participation agreement prior to the alleged regulatory violations did not constitute "presentment." 788 F.3d at 712. The allegations here do not concern a participation agreement, but individual submissions of requests for payment which were knowingly false when made.

requires all procedures take place in the United States by certified technicians. The Seventh Circuit has held that a promise like the one on Form 1500 – to abide by all Medicare and Medicaid laws and regulations – is specific enough to support an express false certification theory of liability.

In *U.S. ex rel. Grenadyor v. Ukranian Village Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014), the defendant pharmacy, on a form it was required to submit to enroll in the Medicare program and thus receive reimbursement for the drugs it sold, promised to "abide by the Medicare laws, regulations and program instructions that apply to this supplier . . .," and also certified "I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including, but not limited to the federal anti-kickback statute)." The relator accused the pharmacy of violating the FCA by accepting kickbacks for its prescriptions. The district court held that the statements on the form were merely promises the pharmacy failed to keep, but the Seventh Circuit disagreed. The appeals court explained that "if you say 'I agree' when you don't agree, you're making a false statement. . ." *Id.* at 1105.

In that case, no liability ultimately attached because the alleged unlawful activity – accepting kickbacks – occurred later; there was no evidence the pharmacy intended to violate the law at the time it signed the participation form. However, the appeals court's analysis makes clear that if the relator had proven that the "I agree" statement was false when made, FCA liability could have attached even though the certification was not made in reference to any particular statutory or regulatory provision but instead to "Medicare laws, regulations and program instructions that apply to this supplier." *Id.* at 1104.

We do not find that the authorities on which LifeWatch relies conflict with *Grenadyor* or support LifeWatch's express certification theory. The *Gross* case did not involve the submission of requests for reimbursement but instead involved a monetary grant to study AIDS. 415 F.3d at 605. The relator in *Gross* alleged that the defendant failed to comply with various health care protocols and clinical practice standards associated with participation in that study. The Seventh Circuit held that the complaint did not meet Rule 9(b) standards because the alleged false statements were described "only by a categorical and essentially undecipherable listing of various 'forms, written reports and study results," and because there was no allegation that any particular certification was a condition of government payment. *Gross*, 415 F.3d at 604-05. Unlike in *Gross*, here every single request for reimbursement certified compliance with Medicare and/or Medicaid rules and regulations, and promised that the information contained in the form would allow the government to make an informed eligibility and payment decision; and, the Relator alleges that those certifications were false and material.

In *U.S. ex rel. Absher v. Momence Meadows Nursing Center, Inc.*, 764 F.3d 699 (7th Cir. 2014), the Seventh Circuit found that a nursing home's certifications on Medicare billing/care assessment sheets which allegedly lied about patients' medical conditions were sufficient to support an FCA theory of liability because the forms stated that reimbursement was conditioned on the truthfulness of the information in them. 764 F.3d at 713. Further, Medicare and Medicaid regulations require such a certification of accuracy. 42 C.F.R. § 483.20. The appeals court eventually found against the relator not because the certification on the form was deficient, but because at the underlying jury trial, the relator had failed to present any evidence of the number of false certifications that were actually filed with the government. *Absher*, 764 F.3d at 713.

There is no dispute that the specific purpose of submitting a Form 1500 is to seek reimbursement for medical services provided; indeed, Form 1500 notes that "no Part B Medicare benefits may be paid unless this form is received as required by existing law and regulations (42 CFR 424.32)." We agree that Form 1500 does not specifically state that reimbursement is conditioned on the procedure taking place in the United States by a certified technician, or cite to the specific statutes or regulations that impose those requirements. But, we find that in this case, the Amended Complaint plausibly alleges that LifeWatch knew at the time it submitted Form 1500 that its promise of compliance with Medicare regulations was not true, and further, that adherence to the particular regulations at issue contain a direct nexus to the Government Insurer's payment decision. That is, the Amended Complaint plausibly alleges that LifeWatch was well aware that, at the time they were submitted by way of the Form 1500, the claims were not eligible for reimbursement because they did not comply with the Medicare and Medicaid regulations that require services to be performed in the United States. *See also, United States ex rel. Rockey v. Ear Institute of Chicago, LLC,* 11 C 7258, 2015 WL 1502378 at *12 (N.D.Ill. March 25, 2015).

## C.

LifeWatch may argue that the approach we adopt above – that a statement that a reimbursement claim complies with all applicable Medicare and Medicaid rules and regulations can constitute an express false certification if the statement is knowingly false when made – is actually a description of an implied false certification, a theory rejected in *Sanford-Brown.* We rejected the proposition that such a statement is an implied – and not an express – certification. Unlike express false certification, which looks for the defendant's actual statements and promises of compliance, implied certification concerns the "underlying contracts, statutes, or

regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment." *Conner,* 543 F.3d at 1218. To put it another way, express certification is concerned with what a defendant says; implied certification is concerned with what a defendant does, and whether it has sought or accepted reimbursement without disclosing that it was in violation of a statute or regulation that might affect its eligibility for payment. As we explain above, the Court concludes that the allegations here are best classified as stating an express certification theory.

But, even if we *were* to treat the allegations in the Amended Complaint as falling under an implied false certification theory, we conclude that *Sanford-Brown* would not foreclose the use of that theory of liability on the allegations presented here. In order to make our reasoning clear, we first briefly summarize the facts of *Sanford-Brown.*

In *Sanford-Brown,* defendant was a for-profit educational institution that entered into a "Program Participation Agreement" ("PPA") with the federal government in order to be eligible to receive federal education subsidies under Title IV of the Higher Education Act ("HEA"). 788 F.3d 702. The PPA conditioned continued eligibility for subsidies upon compliance with various statutes, regulations and contracts under the HEA. *Id.* The relator alleged that, after entering into the PPA, the defendant failed to comply with some of these laws and regulations, and yet continued to accept education subsidies while knowing it was out of compliance. *Id.* He contended that (1) the PPA was a "false record" that the defendant used to make applications for federal subsidies, while knowing it was not in compliance with all of the PPA's underlying regulations, and (2) defendant's certification in the PPA that it would abide by all of the PPA's

regulations caused it to present false claims for payment when it continued to accept federal subsidies. 788 F.3d at 709-10.[11]

The Seventh Circuit analyzed the case under both Section 3729(a)(1)(B) (false record) and then under Section 3729(a)(1)(A) (presentment), and found that the relator had not stated a claim under either section. *First*, the appeals court held that the defendant did not fraudulently "use" the PPA as a false record because there was no evidence that the defendant entered into the PPA in bad faith or intended to later violate the regulations. *Sanford-Brown*, 788 F.3d at 709. *Second*, the Seventh Circuit disagreed that entering into the PPA caused the defendant to present false claims to the government going forward whenever it violated one of the many regulations underlying the agreement. The appeals court held that "FCA liability is not triggered by an institution's failure to comply with Title IV Restrictions subsequent to its entry into a PPA, *unless the relator proves that the institution's application to establish initial Title IV eligibility was fraudulent.*" *Id.* at 711 (emphasis added). So whether we analyze *Sanford-Brown* under Section 3729(a)(1)(A) or (a)(1)(B), what is evident is that the Seventh Circuit was primarily concerned with the fact that there was a lack of proof that, at the time the defendant entered into the PPA, it intended to defraud the government. 788 F.3d at 709, 711-12.

Additionally, *Sanford-Brown* did not involve individual requests for reimbursement for particular medical treatments provided by the defendant. The distinction is important; indeed, the Seventh Circuit specifically noted that "'PPA' is an abbreviation for Program *Participation* Agreement – not Program *Payment* Agreement." 788 F.3d at 712 (emphasis in original). It was in the context of a PPA that the Seventh Circuit rejected an implied false certification theory, reasoning that "the FCA is simply not the proper mechanism to enforce violations of conditions

---

[11]*Sanford-Brown* contains no discussion regarding the statements in the later applications for subsidies, or whether any of the statements might support liability under the FCA.

of participation contained in – or incorporated into a PPA" – at least so long as the initial entry into the PPA was "in good faith." *Id.* at 712. The appeals court explained that if it were to "ignore the significant differences in effect that good-faith entrance and fraudulent inducement into a PPA have on subsequent violations, . . . [that] would have the potential to impose strict liability," a proposition that the court considered "untenable." *Id.* at 711.

By contrast, this is not a case in which LifeWatch allegedly made a single, general, *good faith* promise to comply with various Medicare regulations and then later fell short of meeting those promises. Rather, the Amended Complaint not only alleges that LifeWatch was aware that its actions violated Medicare regulations when it requested reimbursement, but it identifies the specific regulations at issue and links them directly to specific treatments that occurred in violation of those regulations for which LifeWatch submitted individual requests for reimbursement. The allegation that LifeWatch knew of the falsity of the claims for reimbursement at the time they were submitted is a key feature separating this case from the claims at issue in *Sanford-Brown*. As a result, the concern expressed by the Seventh Circuit in *Sanford-Brown*, that a theory of implied certification liability lacks a "discerning limiting principle," 788 F.3d at 711, is not present here. The need to allege – and prove – that the certification was false when made provides the necessary safeguard against the specter of strict liability.

**D.**

The Relator recognizes that *Sanford-Brown* does foreclose his claims that LifeWatch is liable for using non-certified technicians in violation of Medicare, Medicaid and VA regulations. Those requirements are contained in the agreement related to LifeWatch's application to become an IDTF; that is, in a participation agreement, not a later request for payment. Therefore, we

grant the Motion to Dismiss with respect to that claim under the FCA; however, based on the foregoing analysis, the claim that seeking reimbursement on claims to TRICARE for use of non-certified technicians remains in the case.

We close this analysis by repeating the observation with which we began: at its core, the Amended Complaint contains a straightforward allegation of fraud. The Relator says that LifeWatch submitted or caused to be submitted claims that it knew were not eligible for reimbursement, and the Government Insurers would not have paid had they known the truth. Whether the Relator can prove these allegations remains to be seen. But, as we have explained, these allegations – whether under a presentment, express certification, or implied certification theory – fall squarely within the FCA's fundamental purpose of providing a vehicle to recover losses due to fraud.

## V.

Because we find that the Amended Complaint meets the Rule 12(b) standards, we must turn to the question of whether it also meets the enhanced standards under Rule 9 for pleading a fraud claim. LifeWatch makes two arguments in support of the proposition that it fails to do so: (1) the amended complaint does not make any allegations specific to claims submitted to Medicaid, VA or TRICARE, and (2) allegations concerning claims submitted to Medicare do not sufficiently identify the "who, what, when, where and how" of the alleged fraud.

We address LifeWatch's second argument first. Under Seventh Circuit law, a plaintiff who provides a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud satisfies Rule 9(b). *Goldberg v. Rush University Medical Center*, 929 F.Supp.2d 807, 815 (N.D.Ill. 2013), *citing Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir.1992). "[F]air notice is '[p]erhaps the most basic consideration'

underlying Rule 9(b)." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777–78 (7th Cir.1994) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1298, at 648 (1969)). Further, when the allegations of fraud spread over a period of time, the Relator "need not plead specifics with respect to every instance of the fraud but must plead at least representative examples of the fraud." *U.S. ex rel. Bragg v. SCR Medical Transp., Inc.,* No. 07-cv-2328, 2011 WL 1357490 at *2 (N.D.Ill. April 8, 2011) *citing U.S. ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 376, 79 (7th Cir. 2003).

Under these guiding principles, we conclude that the Relator has adequately outlined the fraudulent scheme so that LifeWatch has fair notice of the allegations against it. As to "who" is responsible for the fraudulent acts, LifeWatch need not identify by name or position each person involved in submitting the alleged false claims. It is sufficient that the Amended Complaint identifies LifeWatch generally as the entity responsible. *See, e.g., United States ex rel. Kalec v. NuWave Monitoring, LLC,* 84 F.Supp.3d 793 (N.D. Ill. 2015) (finding complaint adequately pled False Claims Act allegations against corporate defendant while dismissing individual defendants). The Amended Complaint in this case does so.

With respect to the "what," "how," "where," and "when" of the alleged fraud, while the amended complaint does not identify specific Form 1500 documents that were submitted for payment, it does provide sufficient information to allow LifeWatch to trace individual instances of alleged fraud from the use of technicians in India to the submission of individual requests for reimbursement. The Amended Complaint identifies a number specific instances in which heart monitoring procedures performed by technicians in India were billed to Medicare and LifeWatch received payment. The Amended Complaint also lists individual patients by initials, month of

treatment, type of procedure, insurer, CPT code and name of the technician. In one example, the exact amount billed to Medicare is also included.

Given these details, we can reasonably infer – as we do when considering a motion to dismiss – that each of the procedures and patients identified in the complaint were the subject of a Form 1500 that was presented to the government for payment, and that each allegedly contained a false certification that the reimbursement request met all Medicare and Medicaid regulations. It is not necessary at the pleading stage to link specific invoices for payment with specific treatments if the complaint contains sufficient information to create a plausible inference that such a link exists. *See, U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854-55 (7th Cir. 2009) (where relator did not have access to specific invoices for payment of fraudulently certified contracts, inference that such certification must have accompanied invoices was a reasonable one).

As in *Lusby*, we have enough information to identify particular false claims allegedly attributable to LifeWatch. The Amended Complaint alleges specific details with respect to individually identifiable treatments performed by named technicians in India, and then alleges that each of these treatments was billed to Medicare and LifeWatch received payment. *Compare U.S. ex rel. Bragg v. SCR Medical Transp., Inc.*, No. 07-cv-2328, 2011 WL 1357490 (N.D.Ill. April 8, 2011) (dismissing FCA complaint that alleged general scheme to modify medical transport trip tickets but did not identify details for a single allegedly modified trip). Here, we have specific details of specific instances of fraud. And following from those details, it is reasonable to infer that LifeWatch submitted or caused to be submitted a Form 1500 for reimbursement for each procedure; LifeWatch is not in the business of providing heart monitoring services for free.

We turn to LifeWatch's argument that the Amended Complaint is silent regarding specific details of submissions to Medicaid, TRICARE and the VA, and that the Amended Complaint thus should be dismissed as to any claims made to those Government Insurers. It is true that all of the specific examples in the complaint of LifeWatch billing the Government Insurers for procedures performed by technicians in India concern submissions to Medicare. However, the Relator does allege that LifeWatch's fraud extended to billing for procedures under the other government insurance programs, that is, for non-U.S.-based procedures under Medicaid and the VA, and for non-certified technicians under TRICARE (Am. Cmplt. ¶¶ 45, 46, 53, 54). Given that the alleged fraudulent scheme is identical with respect to each of the Government Insurers, we will not dismiss those allegations for which the complaint does not have specific examples.

In finding that the Amended Complaint meets the requirements of Rule 9(b), we are mindful of LifeWatch's concern that the allegations do not trace a specific path from a particular technician in India to the submission of an identified Form 1500. The Relator's use of the passive voice to describe procedures that "were billed to Medicare" and "for which LifeWatch received payment" make it hard to determine when LifeWatch itself submitted the Form 1500 and when that act was performed by the referring doctor. But neither scenario warrants dismissal under Rule 9(b) because, unlike in *Bragg*, the Amended Complaint identifies examples of specific medical procedures that were billed to the Government Insurers for reimbursement. What's more, while allegations concerning LifeWatch technicians changing names on the reports sent to physicians may provide evidence of LifeWatch's intent to defraud or knowledge that its acts were fraudulent, details of such acts are not necessary to show the "who, what, when, where

and how" under Rule 9(b). We are confident that the specific details of the alleged fraudulent scheme may be fleshed out (if they exist, of course) during discovery.

## VI.

The Relator asserts claims under various state laws. We may exercise supplemental jurisdiction over them because the Relator's allegations concerning these state law claims implicate the same facts and legal arguments as those concerning the federal False Claims Act. *See,* 28 U.S.C. § 1367; *United States ex rel. Donald Helfer, M.D. v. Associated Anesthesiologists of Springfield, Ltd.,* No. 10-3076, 2014 WL 4198199 (C.D. Ill. August 25, 2014). LifeWatch does not address the merits of these state law claims in its motion or memorandum, but presumably seeks dismissal of them on the ground that once the federal claims are dismissed there would be no basis to retain jurisdiction over the state law claims. Because we decline to dismiss the federal claims, we will allow the state law claims to go forward as well.

## CONCLUSION

For the foregoing reasons, we deny the Defendant's motion to dismiss (doc. # 41), except with respect to allegations concerning LifeWatch submitting claims involving use of non-certified technicians for patients covered by Medicare, Medicaid and the VA. Any claims relating to the use of non-certified technicians under Medicare, Medicaid and the VA are dismissed. However, claims relating to the submission of claims to TRICARE involving the use of non-certified technicians remain in the case, as do the other claims alleged by the Relator.

At the status hearing set for November 4, 2015, the parties shall be prepared to discuss whether they have an interest in pursuing settlement discussions as well as a schedule for discovery.

ENTER:

SIDNEY I SCHENKIER
United States Magistrate Judge

DATED: October 19, 2015